**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| BRIAN C. FEES, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 07-389 - EJL - LMB |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| FORD MOTOR CREDIT COMPANY, LLC ) | |
| dba FORD MOTOR CREDIT COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Currently pending before the Court are (1) Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) (Docket No. 16) and (2) Plaintiff's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) (Docket No. 20). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Report and Recommendation:

**I.  BACKGROUND**

In August 2006, Plaintiff entered into a retail installment contract (the "contract") with Defendant to finance Plaintiff's purchase of a 2006 Ford Mustang. The amount financed was $29,127.35. The contract provided for 0% financing over the term of the contract: seventy-one (71) monthly payments of $404.54.

In April 2007, Plaintiff filed a Chapter 7 Bankruptcy petition. Plaintiff was counseled by his attorney that he did not have to reaffirm the above-referenced debt or redeem the collateral under the Bankruptcy Code and that he could keep the vehicle if he made payments on time,

**REPORT AND RECOMMENDATION - 1**

maintained insurance as required in the contract, and was not in default in any way regarding the terms outlined in the contract. To date, Plaintiff has never been late on his monthly payments.

In July 2007, the bankruptcy proceeding was completed. In this respect, Judge Jim D. Pappas issued an Order confirming that, because Plaintiff failed to properly specify an intention regarding the 2006 Ford Mustang (reaffirm, redeem, or surrender), there was no stay as to that collateral and that Defendant "may pursue any and all remedies available to it under the 'applicable law' not otherwise prohibited by the provisions of Title 11 U.S.C." *See* Order Granting Mot. to Confirm There is No Stay (Docket No. 9, Att. 2 (Case No. 07-611-JDP)).

Soon thereafter, in August 2007, Defendant began repossession efforts. Later that month, Plaintiff brought an action in the Third Judicial District of the State of Idaho, Canyon County. *See* Compl. (Docket No. 1, Att. 4). Plaintiff alleges that, because he is current on his monthly payments, Defendant's repossession efforts amount to a breach of contract and a violation of the Idaho Uniform Commercial Code. *See id*. at ¶ 8.

In September 2007, Defendant removed the action to this Court. *See* Not. of Removal of Certain Claims Against Ford Motor Credit Company LLC (Docket No. 1). Plaintiff neither objected to Defendant's removal attempt nor filed any motion to remand.

Both parties agree that there are no genuine issues of material fact; instead, through their respective cross-motions for summary judgment, Plaintiff and Defendant acknowledge that only legal issues are presented for this Court's consideration. On the one hand, Defendant argues that the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") expressly prohibits Plaintiff's conduct and, therefore, not only preempts state law, but applies to dismiss Plaintiff's claims against it. On the other hand, Plaintiff contends that his failure to either

**REPORT AND RECOMMENDATION - 2**

reaffirm his debt or redeem the collateral results only in the automatic stay being lifted and that Idaho state law must then apply to provide the remedy, if any, to Defendant.

## II.  REPORT

### A.  Summary Judgment: The Standard

Motions for summary judgment are governed by Fed. R. Civ. P. 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The initial burden is on the moving party to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); Fed. R. Civ. P. 56(c).  If the moving party meets its initial burden, then the nonmoving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund*, 883 F.2d 371, 374 (9th Cir. 1989) (citation omitted).

Here, after examining the record and listening to the parties' oral argument, there are no issues of fact that prevent the Court's consideration of the remaining legal issues presented in the pending motions for summary judgment.

**REPORT AND RECOMMENDATION - 3**

**B.     The Bankruptcy Code and BAPCPA**

Courts have long struggled with the issue of whether the Bankruptcy Code permits a "fourth option" for a Chapter 7 debtor's secured property; that is, declaring bankruptcy and, instead of either (1) reaffirming the debt,[1] (2) redeeming the collateral,[2] or (3) surrendering the collateral,[3] keeping the collateral while keeping up with any payment obligations.  This question of whether a debtor who remains current on all installment payments to a lender may avoid repossession without either reaffirming the debt or redeeming the collateral is recognized as one of "the most controversial consumer credit issues" under the Code.  *See* Waxman, Ned W., "Redemption or Reaffirmation:  The Debtor's Exclusive Means of Retaining Possession of Collateral in Chapter 7," 56 U. Pitt. L. Rev. 187 (1994).

Prior to BAPCPA's 2005 enactment, courts across the country were divided on the issue of whether debtors could employ this fourth option (also referred to as "ride through," "retain and pay," and/or "pay and drive").  Some courts considered the process permissible under the Bankruptcy Code while other courts, interpreting the very same Code provisions, came to the opposite conclusion.  In the Ninth Circuit, Chapter 7 debtors who were current on their payment and insurance obligations could retain their cars without entering into reaffirmation agreements. *See McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668, 673 (9th Cir. 1998).

---

[1]  Reaffirmation is an agreement between the debtor and the lender which is essentially a new commitment post-petition and, therefore, not affected by any bankruptcy discharge.

[2]  Redemption permits a debtor to pay the secured lender an amount equal to the value of the collateral in exchange for a clear title.

[3]  Surrender permits the debtor to notify the lender that he intends to permit the lender to exercise its contractual right of repossession with regard to the vehicle/collateral.

**REPORT AND RECOMMENDATION - 4**

BAPCPA amended sections 521(a)(2) and 362(h) and added new sections 521(a)(6) and 521(d). On paper, these changes appeared to eliminate the so-called "fourth option" authorized by *Parker*.

1. Section 521(a)(2)

Section 521(a)(2), as amended by BAPCPA, provides that an individual Chapter 7 debtor, within thirty (30) days of the filing of the petition or the meeting of creditors, whichever is earlier in time, must file a statement of intention to either reaffirm, redeem, or surrender secured property; and, further, within thirty (30) days of the first date set for the meeting of creditors, that debtor must perform the stated intention as to such property. *See* 11 U.S.C. § 521(a)(2).

2. Section 362(h)

BAPCPA's section 362(h) applies to individual cases under any chapter of the Bankruptcy Code with respect to personal property of the debtor or the estate, reciting clear consequences for failing to comply with section 521(a)(2)'s reporting requirements. Specifically, section 362(h) terminates the automatic stay as to such personal property if an individual debtor does not (1) timely file their statement of intention under section 521(a)(2); or (2) indicate in the statement of intention that the debtor will either surrender or retain the collateral, and if retaining, either redeem or reaffirm. *See* 11. U.S.C. § 362(h)(1)(A). Section 362(h) also lifts the automatic stay (and abandons the property) if the debtor does not timely perform the action specified in the statement of intention. *See* 11. U.S.C. § 362(h)(1)(B).

3. Section 521(a)(6)

Section 521(a)(6) further provides that if an individual Chapter 7 debtor does not reaffirm, redeem, or surrender secured personal property within forty-five (45) days "after the

**REPORT AND RECOMMENDATION - 5**

first meeting of creditors," the automatic stay under section 362(a) is "terminated with respect to the personal property of the estate or of the debtor," and "such property shall no longer be property of the estate." *See* 11. U.S.C. § 521(a)(6). Moreover, under section 521(a)(6), "the creditor may take whatever action as to such [personal] property as is permitted by applicable nonbankruptcy law . . . ." *See id.*

    4.    Section 521(d)

Section 521(d) allows ipso facto default clauses - clauses that place a debtor in default for filing bankruptcy - to be enforced, notwithstanding other Code restrictions that previously prevented or limited their enforcement. *See* 11. U.S.C. § 521(d). In short, because section 521(d) expressly refers to sections 521(a)(6) and 362(h), a debtor who "'fails timely to take the action' under those sections no longer has Code protection against an ipso facto default." *See Dumont v. Ford Motor Credit Co.*, 383 B.R. 481, 488 (9th Cir. BAP 2008) (quoting 11. U.S.C. § 521(d)).

**C.**    **BAPCPA: Its Effect on the "Fourth Option"**

Taken together, BAPCPA's revisions to the Bankruptcy Code suggest that the former "fourth option" is no longer permitted. *See In re Steinhaus*, 349 B.R. 694, 703 (Bkrtcy. D. Idaho 2006) ("Section 521(a)(6) gives an individual [C]hapter 7 debtor two options, and only two options, for retaining personal property in which a creditor holds a purchase money security interest: redemption or reaffirmation. It does not allow a debtor to choose a 'retain-and-pay' or 'ride-through.'") However, while the "fourth option" may have technically been eliminated, recent bankruptcy court decisions suggest that, in reality, it still may exist depending upon the applicable state law.

**REPORT AND RECOMMENDATION - 6**

Even though a Chapter 7 debtor has neither reaffirmed, redeemed, nor surrendered the personal property collateral in accordance with section 521(a)(6), a secured creditor may be entitled *only* to an order granting relief from the automatic stay - not an order either compelling a debtor's surrender of the property or authorizing a creditor's foreclosure on the property.[4] For example, in *In re Steinhaus*, a bankruptcy judge in this District[5] specifically ruled that, despite BAPCPA, it did not have the authority to order a debtor to turn over collateral to a secured creditor even though that debtor failed to adhere to section 521(a)(6)'s statement of intention protocol. *In re Steinhaus*, 349 B.R. at 707-708. Instead, Chief Bankruptcy Judge Terry L. Myers held that the creditor's limited remedies under BAPCPA did not include an order allowing a creditor the ability to repossess the collateral, reasoning:

> [Section] 521(a)(6)'s express relief . . . unambiguously provides Creditor with a comprehensive remedy for Debtors' failure to redeem or reaffirm. This remedy consists of three parts: termination of the stay, abandonment (*i.e.*, the property is no longer property of the estate), and explicit permission for Creditor to proceed as permitted by state law.
>
> Had Congress intended to also create the remedy of an immediate order of possession, it logically would have been included in this listing of relief in [section] 521(a)(6). It was not. The Court declines to interpret [section] 521(a)(6) as authorizing the Court to provide additional remedies. . . . .

---

[4] The inability to compel surrender of or foreclosure on collateral that was not properly accounted for within a debtor's statement of intention pursuant to section 521(a)(6) necessarily highlights the questions that represent the elephant in this courtroom. Namely, without such an order, is a debtor, in effect, able to take advantage of a non-existent "fourth option"? And, if so, doesn't BAPCPA expressly prohibit such a practice?

[5] As stated during oral argument, this Court certainly does not profess to maintain the same specialized expertise on bankruptcy issues as its brethren who are United States Bankruptcy judges. Therefore, like dancing with another's spouse, caution will be taken and, likewise, deference will appropriately be given to the reasoned decisions by bankruptcy judges on bankruptcy issues. Fortunately, both the Ninth Circuit and this District provide ample direction for the purpose of this Report and Recommendation.

**REPORT AND RECOMMENDATION - 7**

> An order compelling surrender further appears inconsistent with the idea that "the creditor may take whatever action as to such property as is permissible by applicable nonbankruptcy law" as provided by [section] 521(a)(6). This language acknowledges the importance of state law regarding the competing interests and rights of debtors and creditors in collateral following the termination of the stay. That Congress intended to either supplement or supplant such law by compelling surrender of possession before adjudication of state law rights is questionable.

*See id.*

Nearly two years later, in *In re Dumont*,[6] the United States Bankruptcy Appellate Panel of the Ninth Circuit took up the issue of BAPCPA and its effect on the "fourth option." There, the Bankruptcy Appellate Panel determined that a Chapter 7 debtor, who specifically stated that it was her intent to retain the motor vehicle securing a creditor's claim and to continue to make her regular monthly payments to the creditor, violated the Bankruptcy Code. *See In re Dumont*, 383 B.R. at 489. According to the Panel, the creditor's subsequent repossession of the automobile collateral, while *not* in violation of the Bankruptcy Code itself, was nonetheless subject to state law following the automatic stay's termination:

> Here, Dumont did not fulfill her duties under sections 521 and 362(h) because she failed to indicate in her statement an intent either to reaffirm or redeem, yet still retained the car. As a result, the stay lifted and the car was no longer property of the estate. Dumont also failed to fulfill her duties under section 521(a)(6) and, in addition to stay relief and abandonment, Ford was free to take whatever action is allowed under California law.

*See id*. Thus, *In re Dumont* stands for two important propositions, consistent with the reasoning offered in *In re Steinhaus*. First, where a debtor fails to comply with the applicable requirements

---

[6] Perhaps noteworthy, *In re Dumont* involved the same defendant party as the Defendant here - Ford Motor Credit Company. Moreover, *In re Dumont* was resolved on February 6, 2008, approximately two weeks before Defendant filed its Motion for Summary Judgment here. Yet, Defendant does not cite *In re Dumont* in its moving submissions.

**REPORT AND RECOMMENDATION - 8**

within BAPCPA as to accounting for property encumbered by debt, the automatic stay is lifted as to that property. Second, once the automatic stay is lifted, a creditor is then able to exercise its nonbankruptcy law remedies - exactly what section 521(a)(6) states in no uncertain terms.

What *In re Dumont* does not stand for, however, is that a creditor under such circumstances is given carte blanche authority to repossess property. Rather, both *In re Steinhaus* and *In re Dumont* unequivocally leave that issue to state law. *See id*. ("However, Ford's right to repossess remains subject to state law limitations. The issue now becomes whether it is within the jurisdiction of the bankruptcy court to decide the validity of the repossession under state law."); *In re Steinhaus*, 349 B.R. at 709 ("Moreover, an order 'authorizing' foreclosure would appear to place this Court in the stead of the state court which, following stay termination and effective abandonment of the collateral under [section] 521 (a)(6), will be the forum to decide the propriety of 'action[s] as to such property as [are] permitted by applicable nonbankruptcy law.' This Court has no reason to usurp the role or prerogatives of the state court in such matters.")[7]

In other words, based upon bankruptcy cases interpreting and applying BAPCPA's amendments, the Bankruptcy Code appears to assist creditors only insofar as removing any *federal* restrictions for repossessing collateral once a debtor fails to meet section 521(a)(6) or

---

[7] *See also* 4 Collier on Bankruptcy ¶ 521.10[4] at 521-56 (15th ed. rev. 2006) ("Section 521(a)(6)] does not authorize a creditor to repossess property. It leaves that issue to applicable nonbankruptcy law. There are likely to be serious questions under nonbankruptcy law about whether repossession from a debtor who is current in payments is in good faith, whether a creditor has waived a default by accepting later payments, or whether other provisions of state law would prohibit repossession.") Combined, this authority appears to reject Defendant's position that "Federal law indicates that [Plaintiff] must surrender because he has not properly followed those steps outlined . . . for retention." *See* FMCC's Resp. to Mot. for Summ. J. of Pl., p. 3 (Docket No. 27).

**REPORT AND RECOMMENDATION - 9**

section 362(h); that is, terminating the automatic stay.  In contrast, the Bankruptcy Code does not operate to override any state law protections that may apply to the debtor/creditor relationship once the automatic stay is lifted.[8]

This distinction may very well create some tension between federal and state law, while having the practical effect of resorting to the pre-BAPCPA Bankruptcy Code in certain situations.  *See In re Steinhaus*, 349 B.R. at 710 ("'[T]he creditor's remedy of expiration of the stay will in many cases be illusory.'" (citing *In re Rowe*, 342 B.R. at 351-52 (Bkrtcy. D. Kan. 2006))); *see also In re Dumont*, 383 B.R. at 488-89 ("Some state consumer protection statutes prevent a creditor from repossessing when there is no payment default.  These state consumer protection statutes have the potential to make the aforementioned BAPCPA provisions meaningless if repossession is barred by state law when a debtor's payments are current.") This reality was clearly recognized and addressed by Judge Myers when authoring *In re Steinhaus*, commenting:

> Creditor has argued that without the Court's order of surrender and authorization of foreclosure, it will be just as unprotected from Debtors' attempted "ride-through" here as it would have been pre-BAPCPA.  This, it

---

[8] This applies equally to Defendant's alternate argument that Plaintiff, despite being current on payments, *is* in default based upon the credit contract's *ipso facto* clause, meaning that Plaintiffs are in default in the event they file for bankruptcy.  *See* FMCC's Resp. to Mot. for Summ. J. of Pl., p. 6 (Docket No. 27).  *In re Dumont* expressly determined that BAPCPA allows *ipso facto* clauses to be enforced, but noted that "there may be other restrictions on such creditor actions."  *See In re Dumont*, 383 B.R. at 488.  Namely, the court observed that, "[w]hen section 521(d) applies, permitting an *ipso facto* default clause to be effective, the creditor who repossess must still abide by state law."  *Id*.; *see also In re Steinhaus*, 349 B.R. at 710 ("Creditors still must ensure that the contract and their efforts to enforce the terms in it, do not run afoul of any applicable state laws.  Congress has thus elected to remove any *bankruptcy* impediment to use of *ipso facto* clauses once a debtor fails to meet § 521(a)(6) or § 362(h).  But whether Congress tried to - or even could - address state law limitations on use of such clauses is a different matter entirely.") (emphasis in original).

**REPORT AND RECOMMENDATION - 10**

>contends, flows from the potential inability to foreclose the security interest in the [collateral] until Debtors default in payment, notwithstanding that stay relief has been obtained.
>
>While that may be true, and while BAPCPA's stay termination and elimination of bankruptcy limits on ipso facto clauses may not yield full relief from a "ride-through" attempt, this does not justify a construction of section 521(a)(6) by this Court that would add to the remedies expressly granted by Congress or invade the province of the state courts.

*See In Re Steinhaus*, 349 B.R. at 711.

This perceived friction should not be misunderstood as the equivalent of a conflict that necessitates a preemption analysis as Defendant proposes. *See* Mem. in Supp. of Mot. for Summ. J. Pursuant to Fed. R. Civ. P. 56(c), pp. 2-6 (Docket No. 18). Even though neither *In re Steinhaus* nor *In re Dumont* specifically speaks to the preemption issue, this does not negate their utility. To be sure, in discussing the interplay between federal and state law, the questions that Defendant seeks to have this Court answer in its favor (*see infra* at n. 4, p. 7) are nonetheless contained within both the *In re Steinhaus* and *In re Dumont* decisions.

While essentially holding that federal law does not endorse a "fourth option," each case simultaneously acknowledges (as it must) that state law is not rendered inoperative as a consequence.[9] To the contrary, each case leaves it to state law to pick up where the Bankruptcy

---

[9] Even though cases interpreting BAPCPA suggest that the Bankruptcy Code itself no longer supports a "fourth option," BAPCPA's statutory language can arguably still accommodate a "ride through" in ways distinct from the circumstances giving rise to this action. For example, if a debtor and creditor file a reaffirmation agreement only to have a court deny the agreement for not being in the best interest of the debtor or presenting an undue hardship on the debtor (*see* 11 U.S.C. § 524(c)(6)(A)), the debtor will then be free to continue making his payments without his property being repossessed according to the Bankruptcy Code. *See, e.g.*, *In re Quintero*, 2006 WL 1351623 (Bkrtcy. N.D. Cal. May 17, 2006) (unpublished) (holding that creditor may not repossess collateral given court's failure to approve reaffirmation agreement); *In re Moustafi*, 371 B.R. 434, 439-40 (Bkrtcy. D. Ariz. 2007) (granting ride-through after denying approval of reaffirmation agreement). This process has been labeled as the "backdoor ride-through."

**REPORT AND RECOMMENDATION - 11**

Code leaves off after the automatic stay is lifted.  The Bankruptcy Code requires no more, no less.  *See, e.g.*, *In re Doty*, 2008 WL 4104485 (Bkrtcy. D. Mont. Aug. 28, 2008) (unpublished) (rejecting creditor's preemption argument where bankruptcy statute's specific references to "State statute" and "applicable nonbankruptcy law" clearly entail application of state law such that bankruptcy statutes "do not preempt the state statutes").  It is the potential absence of any conflict between the Bankruptcy Code and state law that may explain why neither *In re Steinhaus* nor *In re Dumont* discusses preemption.[10]

### D.     The Interplay Between the Bankruptcy Code and State Law

In his July 2007 Order Granting Motion to Confirm There is No Stay, Judge Pappas ordered what the above-cited case law already requires - that the collateral at issue here is no longer part of the estate and that Defendant may pursue all remedies available to it under the "applicable law."  *See* Order Granting Mot. to Confirm There is No Stay (Docket No. 9, Att. 2 - Case No. 07-611-JDP).  The "applicable law" represents the "nonbankruptcy law" referenced within BAPCPA and, as previously discussed, entails an application of state law.  However, before this Court can discuss and interpret the effect of applying Idaho state law to the instant action, its jurisdiction must first exist.

---

[10] In its briefing and during oral argument, Defendant claims that *In re Almond*, 2007 WL 1345224 (Bkrtcy. M.D.N.C. May 7, 2007) (unpublished), should compel the relief that Defendant seeks here.  This Court does not agree.  First, by its own terms, *In re Almond* does not discuss the applicability of what amounts to a "fourth option."  *See id.* at n. 8, *5 ("the parties briefed the issue of whether "ride through" has indeed been abolished by BAPCPA.  However, as discussed below, the issue at hand is whether the discharge injunction has been violated, and its resolution does not require the Court to address the "ride through" issue.") Second, *In re Almond* dealt with a contempt proceeding specific to a discharge injunction, focusing on the interplay between *in rem* and *in personam* proceedings to resolve that question - not the interplay between state and federal law to determine what effect BAPCPA has on what Plaintiff is attempting to do here.

**REPORT AND RECOMMENDATION - 12**

As in *In re Dumont*, the collateral at issue is no longer the property of the estate. Because the collateral is no longer the property of the estate, it cannot be said that the outcome of this proceeding "could conceivably have any effect on the estate being administered in bankruptcy," the test for determining whether a civil action is "related to" a bankruptcy case for the purpose of conferring federal jurisdiction. *See In re Dumont*, 383 B.R. at 490 (citing *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988); *In re American Hardwoods, Inc.*, 885 F.2d 621 (9th Cir. 1989)). As the Bankruptcy Appellate Panel in *In re Dumont* held:

> The bankruptcy case has been closed and regardless of the outcome of any suit in state court there appears to be no effect on this bankruptcy estate. Both Dumont's and Ford's rights and remedies under the Contract are defined and brought into existence by their Contract and are now governed by state law. Therefore, on these facts, we conclude that the bankruptcy court did not have jurisdiction to determine whether the repossession is valid under state law.

*See In re Dumont*, 383 B.R. at 490; *see also In re Steinhaus*, n. 35 at 709 ("After the collateral is no longer property of the estate, whether or not the creditor has the 'authority' to foreclose under applicable nonbankruptcy law is an issue at least arguably outside bankruptcy jurisdiction on the theory it is not one 'arising under' the Code, 'arising in' the bankruptcy case, or 'related to' the case." (citing *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435 (9th Cir. 1995); *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193 (9th Cir. 2005))).

It is undisputed that the underlying bankruptcy proceeding is closed. Accordingly, the collateral at issue is no longer part of the debtor's estate and, consistent with both *In re Dumont* and *In re Steinhaus*, it does not appear that this Court has jurisdiction over Plaintiff's underlying claims or, likewise, Defendant's counterclaims. Therefore, this Court is in no position to substitute its judgment for that of the state judiciary, interpreting its own body of law, as to the question of whether a creditor can repossess collateral that is current on all payment and

**REPORT AND RECOMMENDATION - 13**

insurance obligations.  As a result, the parties' cross-motions for summary judgment should be denied and the action remanded to state court.

### III.  RECOMMENDATION

Based upon the FOREGOING, it is hereby RECOMMENDED that (1) Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) (Docket No. 16) be DENIED and (2) Plaintiff's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) (Docket No. 20) be DENIED.

Further, it is RECOMMENDED that this action be remanded to state court.



DATED:  **September 18, 2008**.

_/s/ Larry M. Boyle_
Honorable Larry M. Boyle
Chief U. S. Magistrate Judge